(118 App. Div. 468.)

PUTNAM v. LINCOLN SAFE DEPOSIT CO. et al.

(Supreme Court, Appellate Division, Third Department. March 28, 1907.)

1. LIMITATION OF ACTIONS—ACCRUAL OF RIGHT OF ACTION—TITLE OF PROPERTY.
Limitations do not begin to run against an action by remaindermen against a life beneficiary and a trustee to determine the rights of the parties in the trust property till the death of the life tenant.
[Ed. Note.—For cases in point, see Cent. Dig. vol. 33, Limitation of Actions, § 231; vol. 42, Remainders, § 16.]

2. WILLS—REQUISITES AND VALIDITY—WHAT LAW GOVERNS.
Where there is no evidence that Georgia and South Carolina corporations, the stock of which is bequeathed, had their principal investments in real estate and in machinery attached thereto, the stock will be treated as personalty, so that the law of the domicile of the testator governs as to the validity of the bequest.
[Ed. Note.—For cases in point, see Cent. Dig. vol. 49, Wills, §§ 185, 941.]

3. TRUSTS—EXISTENCE—CONSTRUCTIVE TRUSTS—PROPERTY INCLUDED.
Where a life beneficiary of a trust estate and her husband, as trustee, had a joint bank account, and the proceeds of insurance of a building belonging to the beneficiary were placed to its credit and afterwards invested in corporate stock, but further sums were drawn from the joint account, in excess of the amount of the insurance, for the rebuilding of the place insured, the stock should be treated as part of the trust estate, in favor of the remaindermen, rather than as the individual property of the life beneficiary.

**4. SAME—BURDEN OF PROOF.**

Where the relations of a trustee and life beneficiary were such that each must have been fully advised of all the acts and dealings of the other with relation to the trust estate, and there was a commingling by them of the trust moneys with their individual funds, and no rights of creditors or other equities of innocent third parties intervened, the burden of proof is on their representatives to show that property was purchased with the money of the life beneficiary, and not with that of the estate.

**5. LIFE ESTATES—PERSONAL PROPERTY—ACCOUNTING—CHARGES.**

Where a life beneficiary gave to her husband, as trustee, a note in settlement of a shortage in the trust estate, which she had received to her own use above the securities on hand, and it requires the entire amount of the note to make the trust estate good for devastavit that has been occasioned, and many of the securities of the trust estate stand in the life beneficiary's name, and large amounts thereof were sold with her personal knowledge, and the moneys received by her and deposited in a joint bank account, her estate is liable to the remaindermen for the amount of her note.

**6. SAME.**

Where the life beneficiary of a trust estate sold securities standing in her name, and the proceeds were used in the purchase of new securities, which are treated as part of the trust estate, and the life beneficiary gives a note on which her estate is charged to balance a shortage, the proceeds of the sale should not be considered a part of the trust estate in favor of remaindermen.

Cochrane, J., dissenting in part.

Appeal from Special Term, Onondaga County.

Action by Robert M. S. Putnam against the Lincoln Safe Deposit Company and others. From the judgment (100 N. Y. Supp. 101, 49 Misc. Rep. 578), plaintiff and defendants Harry P. Pendrick, as administrator with will annexed of Mary S. Putnam, and others, take separate appeals. Modified.

The action was commenced to have a substituted trustee appointed in the place of the late Judge John R. Putnam, who, it is claimed, was a trustee under the will of Robert M. Shoemaker, to execute such trust, and to have determined the rights and interests of the plaintiff and his two brothers and their mother in the trust property, which was largely kept in a box in the office of the defendant the Lincoln Safe Deposit Company. The plaintiff, Robert S. Putnam, and the defendants John Risley Putnam and Israel Putnam, are children of said John R. Putnam, deceased, and his wife, Mary S. Putnam, and her only children and heirs at law; and she was a daughter of said Robert M. Shoemaker, late of Cincinnati, Ohio, deceased. The action was commenced after the death of said John R. Putnam and before the death of his wife. It was claimed that under the will of said Robert M. Shoemaker he gave certain of his property in trust to said John R. Putnam, for the benefit of his wife, with remainder to her children. Soon after the commencement of the action said Mary S. Putnam died, and Charles H. Sturgis was appointed temporary administrator of her estate. He afterwards died, and the defendant Harry P. Pendrick was appointed her administrator with the will annexed. The answer of the defendant John Risley Putnam practically admitted the allegations of the complaint and joined in the prayer for relief therein contained. The representatives of the estates of John R. Putnam and Mary S. Putnam separately answered, denying substantially all the allegations of the complaint. The action came on for trial at the Special Term, and resulted in an interlocutory judgment holding that, under the will of Robert M. Shoemaker, John R. Putnam, the father, took title to one-fifth of the residuary estate thereunder as trustee, for the benefit of Mary S. Putnam as life tenant and her three children, and upon her death the remainder passed to her three children in equal shares by virtue of the will. The interlocutory judgment de-

creed an accounting of the trust estate and directed a reference to report concerning the same and the situation of the trust property and its equitable division. See Putnam v. Lincoln Safe Deposit Co., 34 Misc. Rep. 333, 69 N. Y. Supp. 808. On appeal to this court such interlocutory judgment was affirmed. 66 App. Div. 136, 72 N. Y. Supp. 968. Reference to the report of that decision may be had for the material provisions of the will in question. In accordance with the requirements of the interlocutory judgment, the matter went to a referee to take and state the account of the trust estate. On the coming in of his report it was confirmed by the Special Term, and final judgment thereon directed. On the hearing before the referee a statement or inventory made by Judge Putnam in 1899, just before leaving on a journey with his wife to the Philippine Islands, during which he died, and which was found in his safe after his death, showing, as is claimed, the amount of the corpus of the trust estate, of what it consisted, where such estate was kept, what amount thereof had been disposed of, and what amount had been purchased to take the place of that disposed of, known as "Exhibit 27," and also a note, signed by Mrs. Putnam, for $36,987, given by her to him as trustee, which balanced the account as made by him, were received in evidence; and it was held at the Special Term that said Exhibit 27 was competent evidence against her estate, as well as his. On appeal to this court it was held by a divided court that such Exhibit 27 was improperly received in evidence as against her estate, and the judgment was for that reason reversed, and a new trial ordered. 87 App. Div. 13, 83 N. Y. Supp. 1091. A new trial has now been had before the court at Special Term. 49 Misc. Rep. 578, 100 N. Y. Supp. 101.

The trial court found, among other things, "that in the years 1887 and 1888 there was delivered to John R. Putnam, as trustee under the will of Robert M. Shoemaker, by the executors of Robert M. Shoemaker, deceased, securities and cash of the par value and amount of $176,490.75." This amount does not include 115 shares of Sibley Manufacturing Company's stock, of the par value of $11,500, 20 shares of the Langley Manufacturing Company's stock, of the par value of $2,000, nor 40 shares of the Augusta Factory stock, of the par value of $4,000, which belonged to Robert M. Shoemaker, and which it is claimed formed a part of the trust estate. The court also found that $104,600 of the said amount of $176,490.75 were issued to and in the name of Mary S. Putnam by the respective corporations issuing the same, and that with the knowledge on her part of the trust provisions of her father's will, this $104,600 in amount of securities were transferred to her by her father's executors previous to said delivery thereof to John R. Putnam as trustee; that upon the death of John R. Putnam there was missing of said securities and cash the sum of $100,290.75, and that, after deducting such missing cash and securities, there remained on hand $76,200; that of this last-named amount $33,300 thereof stood in the name of John R. Putnam as trustee, or were payable to bearer, and $42,900 of said securities on hand stood in the name of Mary S. Putnam; and that, of the total amount of $104,600 of securities issued in Mary S. Putnam's name, $61,700 were missing and were sold by her, and for which she realized the sum of $68,410. There is also a finding "that Mary S. Putnam knew that the will of her father, Robert M. Shoemaker, created a trust, and was a party to a decree of the Ohio courts, rendered in the year 1887, which so adjudicated. She received the said securities, payable to and sold by her as aforesaid, and the proceeds thereof, for the purposes of said trust, to carry out the trust provisions of said will, and constituted herself, by her intermeddling with and assumption of the management of said property and proceeds, a trustee of said trust in respect to said moneys." The court decided, in substance, that the Augusta Factory stock, the Sibley Manufacturing Company's stock, and the Langley Company's stock, and the proceeds and income therefrom, belonged to the estate of Mary S. Putnam; that 290 shares of the Delaware & Hudson Canal Company's stock and 78 shares of the New Jersey Central stock, found in the Lincoln Safe Deposit box standing in her name, also belonged to her estate, and that there could be no recovery for moneys expended from the proceeds of the sale of missing securities for improvements on Mrs. Putnam's residence, known as "Putnam Place," because of the bar of the statute of limitations. The court also decided that the securities, amounting to $76,200, now on hand (including $4,000 received

for Sibley bonds, which had been sold), and the income thereon, and also 15 shares of the stock of the First National Bank of Saratoga Springs and 170 shares of Western Union Telegraph Company stock standing in Judge Putnam's name, and which were impressed with the character of trust property and set apart by him for that purpose, should be divided equally between the children of Judge and Mrs. Putnam, and also that they are entitled to recover from the estate of Mary S. Putnam the sum of $68,410, the amount of the proceeds of the sales by her of $61,700 of securities standing in her name, with interest from the date of her death. The estate of John R. Putnam was also held liable to said parties jointly with the estate of Mary S. Putnam for the said last-named sum, with interest. The court also awarded a judgment against the estate of Judge Putnam for $24,610.75 for the balance of securities and cash which were received by him, and which were not now on hand, which included the sum of $5,750 for loss of certain securities occasioned by his neglect to dispose of the same when they had that value. There was also awarded against the estate of Mary S. Putnam a judgment upon a note given by M. M. Shoemaker for the interest of the parties in certain real estate in Cincinnati upon their joining in a conveyance thereof; but the court declined to allow a recovery against the estate of Mrs. Putnam for the amount of her note for $36,987, given to her husband as trustee. The defendant Corliss Sheldon, as administrator with the will annexed of John R. Putnam, deceased, has appealed from the entire judgment, and the plaintiff and the defendants Pendrick, as administrator with the will annexed of Mary S. Putnam, deceased, Israel Putnam, and John Risley Putnam have appealed from portions thereof respectively specified. Further facts are stated in the opinion.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

Albert Stickney (M. Edward Kelley, on the brief), for Robert M. S. Putnam.

Edgar T. Brackett (A. Pennington Whitehead and Rockwood & Salisbury, on the brief), for John Risley Putnam.

James W. Verbeck, for Harry P. Pendrick.

CHESTER, J.    The controversy arises because of the claim of the defendant Israel Putnam that his mother was the absolute owner of all the property received from her father's estate and that there was no trust under his will. His interest in making this claim arises from the fact that under his mother's will he was the sole beneficiary, except for a single small legacy to another. So far as this court is concerned it is settled that the estate was one held by Judge Putnam in trust for the benefit of his wife for life, with remainder over to their three children in equal shares upon her death. It is evident that there were times when Judge Putnam was of the opinion that no trust was created, for he says, in Exhibit 27, which has been received in evidence on this trial against his estate, but not against hers, that:

"The eighteenth clause of the will does not convey the estate to John R. Putnam as trustee, but the said clause and the twenty-first bequeaths the property therein mentioned to Mary S. Putnam. At the most the eighteenth clause gives to John R. Putnam a power to manage and control the estate bequeathed to his wife."

This undoubtedly explains very much of his conduct with relation to this estate, especially that of taking and holding many of the securities in his wife's name, and of commingling the proceeds with his own and her own private funds, and in a bank account in his name and that of his wife, upon which either could draw. Notwithstanding he may

have been at times of this opinion it could not have been a very well-settled one; for he must at the same time have realized that there was a liability of his being charged as trustee for this estate, because, when he received it, he receipted therefor as trustee, and his acts all through the management of the estate were inconsistent with this opinion. This is evident, not only in his dealings with others, but with his wife, in relation thereto. Also in Exhibit 27 he takes credit to himself for the amount of his commissions and expenses as trustee. So, too, the note which he took from his wife to balance the trust estate, as shown by Exhibit 27, was made payable to "John R. Putnam, as trustee under the will of Robert M. Shoemaker, deceased"; the body of this note being written by the clerk of Judge Putnam under his direction, and the note itself being signed by her and delivered to him. It is clear, therefore, that, notwithstanding the opinion expressed by Judge Putnam in Exhibit 27 to the contrary, both he and his wife regarded the property received from her father's estate as held in trust.

That being their understanding, and it having been so decided by the interlocutory judgment, the principal question to be determined now is as to the amount of the trust estate. We agree in many respects, with the conclusions of the learned trial court, but we will content ourselves in this opinion with discussing only those features of the case where we are compelled to differ from such conclusions.

In the first place, we are convinced, notwithstanding the very able and ingenuous argument of the learned counsel representing Mrs. Putnam's estate to the contrary, that the statute of limitations does not stand in the way of the consideration of any question arising in the case on its merits. This defense had not been interposed at the time of the former trial, but was first put in by the defendant Pendrick, as administrator with the will annexed of her estate, who was brought into the action in 1905 in the place of the late Charles H. Sturgis, who was the executor of her will. It is sought by this defense to save her estate from liability for such parts of the principal of the trust estate as came to her hands more than six and more than ten years before the action was commenced; both the six and the ten year statute of limitations being pleaded. Under the will of her father, as construed by this court in this action, the plaintiff and his two brothers became, upon the death of their mother, the absolute owners as tenants in common of the property given to Judge Putnam in trust for the benefit of his wife for life. The court of common pleas of Hamilton county, Ohio, in an action brought for the construction of this will, in which Judge and Mrs. Putnam and their three children were parties, in 1887 made a decree to the same effect. It was thus established that all the property received by Judge Putnam pursuant to the eighteenth clause of the will of his wife's father was trust property, that he held the legal title thereto as trustee, that he so held it for her benefit until her death, and that upon her death her three children became the absolute owners thereof in equal shares by virtue of the will. The children had no right to its possession or enjoyment so long as their mother lived. It was not payable to them until her death. It would be a strange rule for the administration of trust estates to hold that when the trustee, because of his belief, mistaken or otherwise, that

the trust was not valid or effective, permitted the life tenant wrongfully to take the legal title to the trust estate without the knowledge of the remaindermen, so far as appears, and hold it for a period long enough for the ten-year or the six-year statute of limitations to run, the remainderman, who begins his action before these statutes have run as against him, is powerless to compel a restoration of and an accounting for the trust estate.

The statute of limitations does not begin to run until a cause of action accrues. This action was commenced, it is true, before the death of the life tenant; but by reason of her death soon thereafter it has become practically an action to compel the turning over of the trust estate to the equitable owners thereof. Under the circumstances presented here, we do not think the statute began to run against the plaintiff or his brothers until the death of their mother. Gilbert v. Taylor, 148 N. Y. 298, 42 S. E. 713, is an authority for this conclusion. There the income of $10,000 was given to a person for life, and upon her death said sum was given to her sister. An infant son of the testator was the residuary legatee. The life beneficiary was appointed his testamentary guardian, and a general guardian was appointed to act in conjunction with the testamentary guardian. The guardians compelled the executors and trustees under the will to account, and obtained a decree requiring the executors to transfer and turn over the estate in their hands to the guardians. The guardians paid the interest on the legacy to the life beneficiary for four or five years, and after that time paid her a gross sum, which enabled her to realize the interest. Shortly after the death of the life tenant the remaindermen brought the action against the residuary legatee, to whom the surviving guardian had paid the residue of the estate charged with the burden of the legacy. The statute of limitations was set up in defense, and it was urged that the plaintiff's legacy had vested at testator's death, and that more than ten years had elapsed since the cause of action accrued. It was held that, although the legacy vested at the death of the testator, it did not become payable until the death of the life beneficiary, and not until then did the cause of action arise, and that the defense of the statute of limitation was therefore properly overruled. To the same effect is Lee v. Horton, 104 N. Y. 538, 11 N. E. 51.

In Perry on Trusts, § 245, it is said:

"A person may become a trustee by construction, by intermeddling with and assuming the management of property without authority. Such persons are trustees de son tort. * * * During the possession and management by such constructive trustees, they are subject to the same rules and remedies as other trustees; and they cannot avoid their liability by showing that they were not in fact trustees, nor can they set up the statute of limitations."

The cases cited in support of a contrary doctrine have no force as applied to the facts of this case; for in none of them was the statute sought to be interposed in favor of the life tenant against the remainderman in a case where, as here, the life tenant, without the knowledge of the remaindermen, improperly took the legal title to the trust property to herself, well knowing its character as such.

In the next place, we think the court erred in holding that the Sibley Manufacturing Company stock, the Langley Manufacturing

Company stock, and the Augusta Factory stock did not belong to the trust estate, but to the estate of Mrs. Putnam. The Augusta Factory stock was included by Judge Putnam in Exhibit 27 as property received from the Shoemaker estate and on hand, and the Sibley Company stock and the Langley Company stock was included by him in such exhibit as property of the estate disposed of by him; the former for $11,448, and the latter for $2,130. So that it is apparent that he at least regarded these stocks as belonging to the trust estate. The Sibley stock and the Augusta stock were shares in Georgia companies, and the Langley stock were shares in a South Carolina company. Those stocks belonged to Robert M. Shoemaker at the time of his death, and the claim is that under the laws of Georgia and South Carolina these stocks were real estate, and that, because the laws of those states required three witnesses to a will of real estate and the Shoemaker will had only two, none of these stocks passed under the will, but as to them the testator died intestate and Mrs. Putnam received them as hers absolutely, as one of the heirs at law, as undevised real estate. It is further claimed that under the laws of Georgia shares of stock of mining and manufacturing companies whose principal investments are in real estate and machinery attached thereto are deemed real property, and under the laws of South Carolina a will is utterly void unless subscribed by three or more witnesses.

There appears to be no proof in the case that in 1887 under the laws of South Carolina the stock of a corporation owning real estate was deemed to be real estate, nor is there any proof that either the Langley, the Augusta, or the Sibley Companies had their principal investments in real estate and in machinery attached thereto; so that the case is entirely wanting in evidence to make these stocks anything other than personal property, which would pass by the laws of the domicile of the testator under his will. Nothing appearing in this record to show that these shares were real estate in 1887, the usual rules must apply, and they must be deemed to be personal property, and as such were governed by the laws of Ohio where the testator had his domicile. That being so, a good title to these stocks passed to the trustee under the will. The fact that it was deemed necessary to go into the courts of South Carolina and Georgia and take proceedings for the purpose of procuring the transfer of the legal title to these stocks cannot alter the case or change the rights of these remaindermen, for they were not parties to either proceeding. Nor was Judge Putnam a party to the proceeding in South Carolina in his capacity as trustee, but only as an individual. In the Georgia proceeding Judge Putnam appears to have admitted service of process as trustee, but both proceedings were apparently conducted by the consent of the parties thereto and as a convenient method of securing a transfer of the legal title of the securities, and there was no attempt in either to have determined the rights of the beneficiaries of the trust as between themselves, or between them and the trustee. If there had been, all the beneficiaries would have been necessary parties in order to be bound, and the trustee in such case does not represent the beneficiaries. Matter of Straut, 126 N. Y. 201, 27 N. E. 259; Carey v. Brown, 92 U. S. 171, 23 L. Ed. 469.

We think, therefore, that these stocks stand in no different relation to this estate than the other securities which were received by Judge Putnam as a portion thereof, and that the Augusta stock which is now on hand should be divided equally among the remaindermen. The proceeds of the sale of the Sibley and the Langley stocks were reinvested in other stocks now on hand, and in that way are to be also so divided.

Again, we are of the opinion that the Delaware & Hudson Canal Company stock and the stock of the Central Railway of New Jersey, which were found in the Lincoln Safe Deposit box standing in the name of Mrs. Putnam, should be regarded as part of the trust estate. It is true that neither of these stocks ever belonged to the testator, Shoemaker, but that they were purchased after his death. They are each specified by Judge Putnam in Exhibit 27 as property purchased or held in place of that disposed of. It is entirely clear, outside of Exhibit 27, that it requires both of them to make the trust estate good for the devastavit existing therein, and it seems reasonable to believe that both were purchased with trust money. It appears that Putnam Place, which stood in the name of Mrs. Putnam, was destroyed by fire, and that in January, 1891, $25,000 of insurance moneys for such loss were received and deposited in the joint bank account of Judge and Mrs. Putnam; that certain New York Central stock was soon thereafter purchased, and the amount thereof paid for from the proceeds of such fire insurance in a check drawn by Judge Putnam upon such bank account; that the New York Central stock was thereafter sold, and these 290 shares of Delaware & Hudson Canal Company stock purchased in place thereof and paid for upon a like check. If we stopped here, there would be much better foundation for the claim that the Delaware & Hudson stock belonged equitably and legally to Mrs. Putnam; but in 1892 Putnam Place was rebuilt, the title thereof still being in Mrs. Putnam's name, and an amount in excess of the $25,000 insurance money was drawn from this same bank account in which the insurance moneys had been deposited, and used in rebuilding and refurnishing the house, and in that way Mrs. Putnam received back to herself an amount exceeding the amount of the insurance moneys. So that the fact that this insurance money was first temporarily applied to the purchase of the New York Central stock, and afterwards, upon the sale of that stock, to the purchase of the Delaware & Hudson stock, is of no importance; for it leaves the purchase price of the Delaware & Hudson stock as having been taken from other funds than the insurance moneys, and such moneys were drawn from the joint account, where the moneys belonging to the trust estate, as well as to Judge and Mrs. Putnam individually, had been kept and intermingled by them. The court has found that there is no evidence that any of the stock of the Central Railway of New Jersey was purchased with trust funds. It is also true that there is no evidence that it was not purchased with such funds. There is a finding that 13 shares of it were purchased by Judge Putnam with his personal funds, and the certificate therefor issued in his wife's name. There is also a finding:

"That after the purchase of the said Delaware & Hudson Canal stock and Central Railroad of New Jersey stock, John R. Putnam received all dividend checks on each of the said stocks, respectively, down to the time of his death, the same being payable to Mary S. Putnam, and the said stocks were found after his death in a safe deposit box leased by him and Mary S. Putnam."

The fact that these stocks were taken in Mrs. Putnam's name is not of much force, in view of the further facts that so large a portion of the trust estate was also so taken directly from her father's estate and so held during the life of the trust. This course of conduct cannot serve to deplete the trust estate to the prejudice of the rights of the remaindermen. We think it the duty of a court of equity to exert itself to preserve the trust estate intact, and where the relations of the trustee and the life beneficiary to each other and to the trust estate were such that each must have been fully advised of all the acts and dealings of the other with relation thereto, and where there has been such a commingling by them of the trust moneys with their individual funds as appears here, and no rights of creditors or other equities of innocent third parties intervene, we should hold that the burden is cast upon the representatives of the trustee and the life beneficiary to show clearly that these stocks were purchased with her money, and not with that of the estate, and that they equitably belonged to her. That has not been done in this case.

There should, too, we think, be a recovery against the estate of Mrs. Putnam, for the benefit of the trust estate in the amount of $7,091 and interest for that amount of trust funds found by the court to have been applied in 1892 for improvements on Putnam Place. This recovery was denied by the trial court on the ground that it was barred by the statute of limitations, which conclusion, as hereinabove stated, we think was erroneous.

Finally, we think the court should have allowed a recovery against the estate of Mrs. Putnam upon her note for $36,987 and the interest thereon from the date of her death. This was made payable to Judge Putnam as trustee, and was evidently given as a settlement for that amount of shortage in the trust estate which she had received to her own use and over and above the securities on hand. It requires the entire amount of this note to make the trust estate good for the devastavit that has been occasioned. When it appears, as it does here, that many of the securities that belonged to the trust estate stand in Mrs. Putnam's name, and a large amount thereof was sold from time to time, which would necessarily require her personal knowledge of the transaction, and that the moneys received therefor were received by her and her husband and deposited in a joint bank account kept in both of their names, and when, as a result of it all, just before leaving upon a long journey with her husband, from which he never returned, the note in question was given to him as trustee, and given for value received, we see no reason why her estate should not be chargeable with the amount thereof for the benefit of the remaindermen of the trust estate, when her conduct and that of her husband, acting together in the management of such estate, had caused it to be diminished in some unexplained way to the amount of such note. When Mrs. Putnam received in her own name the securities from her father's estate which

belonged to the trust, and when she received and purchased other securities with the avails of those disposed of, she received them with full knowledge of the trust and its conditions, and therefore any disposition or holding thereof contrary to the purposes of the trust was unlawful. She became, by her conduct in so receiving and disposing or holding these securities, a trustee by her own wrong in relation thereto, and she should be held liable for a note which she has given, apparently to make amends to the trust estate for the amount of the shortage caused, in part at least, by her management thereof.

The Special Term decided that the estate of Mary S. Putnam, deceased, was liable for the sum of $68,410, the amount of the proceeds of the sale of $61,700 par value of certain securities standing in her name and which were received from the estate of her father. We think it is apparent from this record that the amount of receipts for these sales were in turn used in the purchase of the new securities now on hand, which, we think, must be divided among the remaindermen as part of the trust estate. That being so, her estate should not be charged with the amount and also with her note, given, as we believe, to balance the trust estate; for, if that were done, there would be a double charge against her. The judgment must therefore be modified accordingly. So, also, the judgment as against the estate of Judge Putnam should be modified, so that there shall be a recovery against it only of any deficiency remaining in the trust estate after taking into the account the property here found to belong to it.

The judgment should be modified in accordance with this opinion, and, as modified, affirmed, with costs against the appellant Israel Putnam and the representatives of the estates of Judge Putnam and Mary S. Putnam in favor of the other parties who have filed briefs upon this appeal. All concur, except COCHRANE, J., who dissents in part.

COCHRANE, J. I agree with Mr. Justice CHESTER that the statute of limitations does not affect any question herein. I also agree with him that the Sibley Manufacturing Company stock, the Langley Manufacturing Company stock, and the Augusta Factory stock belonged to the trust estate, and that the estate of Mrs. Putnam should be held accountable therefor.

I think the estate of Mrs. Putnam is erroneously charged with over $6,000, the amount of the Shoemaker note, for certain interests in Cincinnati real estate. There is no evidence on which to base the conclusion of her liability therefor, except statements contained in letters of the executor of the Shoemaker estate to Mr. Sheldon and attached to his account as administrator of Judge Putnam's estate. This account, including the letters, were not received as evidence against the estate of Mrs. Putnam, and the record seems to be entirely destitute of evidence affecting her estate tending to make this a proper charge against her said estate.

In respect to all other questions involved herein, I agree with the court below.